# SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is entered into by and between **ELMER MOCK** ("Mr. Mock") and **FAIRFIELD RESIDENTIAL COMPANY LLC**, and their subsidiaries and affiliates (collectively, "Fairfield") (together, the "Parties"), effective upon the Parties' execution of this Agreement (the "Effective Date").

**WHEREAS**, Mr. Mock commenced a lawsuit against Fairfield in the United States District Court for the Southern District of New York, Civil Action No. 14-cv-09048 (the "Lawsuit"), alleging unpaid overtime pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and the New York Labor Law § 650 *et seq.* and spread of hours pay under the New York Labor Law § 650 *et seq.*;

**WHEREAS**, the Parties wish to resolve this matter by agreement to avoid the expense and inconvenience of further litigation, without any admission of liability or wrongdoing by any of the Parties; and

**WHEREAS**, Fairfield has denied and continues to deny the allegations and claims in the Lawsuit.

**NOW THEREFORE**, in consideration of the mutual covenants set forth herein, and for other valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties hereby agree as follows:

1.  **SETTLEMENT PAYMENT**. Fairfield agrees to pay Mr. Mock the total, gross sum of One Hundred Sixty Thousand Dollars ($160,000.00), in full settlement of the claims which were or could have been asserted by Mr. Mock against Fairfield (the "Claims") in the Lawsuit. This payment ("Settlement Payment") shall be paid in three checks as follows: The first check, in the gross amount of Thirty-Four Thousand Dollars ($34,000.00), is to be made payable to "Elmer Mock," and shall be treated as settlement of alleged unpaid wages subject to applicable taxes and withholding and reported on IRS Form W-2. The second check, in the amount of Sixty Three Thousand Eight Hundred Forty Dollars and Forty Five Cents ($63,840.35), is to be made payable to "Elmer Mock," and shall be treated as settlement of alleged liquidated damages and interest subject to IRS Form 1099 Miscellaneous reporting by Mr. Mock. The third check, in the amount of Sixty Thousand Dollars ($62,159.65), is to be made payable to Mr. Mock's legal counsel, "Blau Leonard Law Group LLC," and shall be subject to IRS Form 1099 Miscellaneous reporting by both Mr. Mock and his counsel.

    These checks shall be delivered to Plaintiff's attorney, Shelly A. Leonard, Blau Leonard Law Group LLC, at 23 Green Street, Suite 303, Huntington, NY 11743, within ten (10) days of the later of: (a) the Parties' execution of this Agreement, (b) the entry of a Stipulation and Order of Dismissal of the Action in the form attached hereto as Exhibit A, and (c) receipt by Fairfield of W-9 Forms completed by both Mr. Mock and his counsel.

2.  **NO OTHER PAYMENT**. Mr. Mock hereby acknowledges and agrees that except as provided above in paragraph 1, he shall not be entitled to receive, and will not receive,

from Fairfield, and he shall not assert a claim against Fairfield for, any other compensation or benefit of any kind or in any amount (including, without limitation, for salary, bonus, or any claimed damages or liability), with respect to the period of time up to and including the Effective Date of this Agreement.

3.  **CONFIDENTIALITY OF THIS AGREEMENT**. Mr. Mock agrees that the terms and contents of, and any discussions resulting in, this Agreement, or the facts underlying the claims asserted in the Lawsuit, shall be maintained by him in strict confidence, and shall not be disclosed by him. Notwithstanding the foregoing, Mr. Mock may disclose the existence of this Agreement and its terms to his immediate family members, legal counsel, financial advisors and other advisors employed or retained by him for the purpose of rendering professional advice, so long as each such person is advised by Mr. Mock of the confidential nature of this Agreement and agrees, prior to disclosure, to abide by the confidentiality provisions hereof. Notwithstanding the foregoing, nothing herein shall be construed to prevent Mr. Mock from communicating or cooperating with any federal or state agency, as permitted by law. It is agreed that in the event Mr. Mock or his representative breaches the obligations imposed by this Section, it would be difficult or impossible to determine the actual damages sustained by the aggrieved Party. Accordingly, it is agreed that in such event, Mr. Mock will pay to Fairfield, as liquidated damages, the sum of Ten Thousand Dollars ($10,000.00) for each such breach that had been adjudicated. The Parties agree that this sum represents the best estimate of the damages Fairfield would sustain by virtue of such a violation of this Section.

4.  **NON-DISPARAGEMENT**. Mr. Mock agrees that, as a condition for payment to Mr. Mock of the consideration provided in Paragraph 1 hereof, neither he nor any of his representatives or family members shall make any disparaging or derogatory statements to any person or entity, including but not limited to, any media outlet (including, but not limited to, Internet-based chat rooms, message boards, social media and/or web pages), industry groups, financial regulatory agencies, financial institutions, or to any current, former or prospective employees, consultants, clients, or customers of Fairfield regarding Fairfield or any of its directors, officers, employees, agents, or representatives, or about Fairfield's business affairs and financial condition.

5.  **RELEASE OF LIABILITY**.

    (a) Mr. Mock, individually and on behalf of his respective heirs, executors, administrators and assigns, hereby fully, forever, irrevocably, and unconditionally releases, remises, and discharges Fairfield, Fairfield's affiliates, successors, and assigns, and any and all of its or their past, present and future directors, officers, agents, employees, trustees, fiduciaries, representatives, insurers, and assigns (whether acting as agents for Fairfield or in their individual capacity) as well as the owners of and/or investors in any properties, including but not limited to Vista Point Apartments, managed by Defendants (individually and collectively referred to as "Releasees") from and with respect to any and all known or unknown claims, demands, charges, liabilities, damages, actions, causes of action and suits of every type whatsoever, in law or at equity, arising out of or relating to any fact, event, act or omission occurring prior to the Effective Date of this Agreement, including without

limitation, the Claims asserted or which could have been asserted in the Lawsuit. This general release includes, but is not limited to:

i.  all claims under any local, state or federal discrimination, fair employment practices and other employment-related statute, regulation or executive order (as they may have been amended) prohibiting discrimination, harassment or retaliation based upon any protected status including, without limitation, race, ethnicity, national origin, age, gender, pregnancy, marital status, disability, veteran status and sexual orientation. Without limitation, specifically included in this paragraph are any claims arising under the Americans with Disabilities Act, as amended, Title VII of the Civil Right Act, as amended, the Equal Pay Act of 1963, the Civil Rights Act of 1866, Section 1983 of the Civil Rights Act of 1871, Section 1981 of the Civil Rights Act, Executive Orders 11246 and 11375, the Immigration Reform and Control Act of 1986, as amended, the Employee Polygraph Protection Act, the Uniformed Services Employment and Re employment Rights Act of 1994, the Health Insurance Portability and Accountability Act of 1995, the Rehabilitation Act of 1973, the Fair Labor Standards Act, Section 806 of the Corporate Fraud Accountability Act of 2002, the Equal Pay Act, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the Age Discrimination in Employment Act of 1967, as amended, which prohibits employers from discriminating against employees on the basis of age, Executive Orders 11246 and 11141, the New York Labor Law, the New York State Human Rights Law, the New York City Human Rights Law, and, to the fullest extent enforceable under applicable law, all similar federal, state or local statutes, regulations and orders;

ii.  all claims under any other local, state or federal employment-related statute, regulation or executive order (as they may have been amended) relating to any terms and conditions of employment or separation from employment to the fullest extent enforceable under applicable law. Without limitation, specifically included in this paragraph are any claims arising under the Family and Medical Leave Act of 1993, the National Labor Relations Act, the Employee Retirement Income Security Act of 1974, the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the Worker Adjustment Retraining Notification Act ("WARN"), including any claims regarding advance notice of termination pursuant to WARN, the Fair Credit Reporting Act, and all similar federal, state or local statutes, regulations and orders;

iii.  all claims for short-term disability benefits and claims to any non-vested ownership interest in Fairfield provided through participation in a Fairfield plan or program;

iv.  all claims under any state or federal common law theory including, without limitation, wrongful discharge, breach of express or implied contract, promissory estoppel, unjust enrichment, breach of a covenant of good faith and fair dealing, defamation, interference with contractual

relations, intentional or negligent infliction of emotional distress, invasion of privacy, misrepresentation, deceit, fraud or negligence; and

v. any other damages, whether known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which Mr. Mock now has, may have or may have had against any of the Releasees, up to the date he signs this Agreement, arising out of or in any way related to his employment with or separation from Fairfield (including claims for retaliation).

b. Mr. Mock and his counsel also warrant and represent that they have not discussed this Action or the facts asserted in the Action with any present or former employee of Fairfield, and they do not know of anyone who has expressed an interest to them in asserting claims such as those raised in the Action.

6. **STIPULATION OF DISMISSAL.** Mr. Mock shall immediately cause his counsel-of-record in the Lawsuit to execute a Stipulation of Dismissal with Prejudice (in the form attached hereto as Exhibit A) and to provide such Stipulation to Fairfield's counsel for filing with the Court. In the event that, for any reason, the filing of such Stipulation of Dismissal does not result in the complete and final dismissal, with prejudice, of the Lawsuit, Mr. Mock agrees to execute such other papers or documents as counsel for Fairfield determines may be necessary to have the Lawsuit dismissed with prejudice and/or to cooperate in seeking judicial approval (on a confidential basis, to the extent possible) of the release of his claims should it become necessary.

7. **BREACH OF THIS AGREEMENT.** Mr. Mock acknowledges that his right to receive and retain the Settlement Payment provided under this Agreement is expressly conditioned on his continuing and complete performance of his material obligations under this Agreement. If either party reasonably believes that the other has breached any of the material terms of this Agreement, that party shall provide the other party with written notice of any such breach and five (5) business days in which to cure any such breach, if such breach is curable. Each party reserves its/his right, if applicable and if any breach remains uncured (if uncurable), to initiate an action in court for breach of contract.

8. **ACKNOWLEDGEMENTS.**

(a) Mr. Mock acknowledges that this Agreement between him and Fairfield, including the releases contained in Paragraph 5(a), is written in a manner which he understands, and that he understands his obligations under this Agreement.

(b) Mr. Mock acknowledges that no other promises or agreements of any kind have been made to or with him by any person or entity whatsoever to cause him to sign this Agreement, that he freely and voluntarily assents to all of the terms and conditions of this Agreement, and that he signs his name as his own free act and deed, following receipt of advice of counsel.

(c) If, for any reason, it is determined by any federal, state or local taxing authority that the non-wage amounts referenced in Paragraph 1, or any portion thereof, should have been subject to taxation or other withholding, Mr. Mock agrees that he shall assume

all responsibility for the payment of any taxes or withholdings, interest and penalties assessed in connection therewith, and that he shall indemnify and hold harmless Fairfield from any taxes or withholdings, interest and penalties required to be paid by Fairfield thereon, except for Fairfield's share of any FICA payment that may be due, plus any attorneys' fees incurred by Fairfield with respect to such tax assessment, penalty and/or interest. Mr. Mock further acknowledges that he has sought or had the opportunity to seek his own advice on the tax liability and/or penalties and interest associated with the Settlement Payment, and that he has not relied on any representations made by Fairfield or its counsel.

9.  **NON-ADMISSION.**

    (a)  Mr. Mock understands and agrees that neither this Agreement nor anything provided herein constitutes an admission that Fairfield and/or any of the Releasees has violated any law or has any legal liability to him.

    (b)  Fairfield understands and agrees that neither this Agreement nor anything provided herein constitutes an admission by Mr. Mock that his Claims in the Lawsuit lack merit.

10. **APPLICABLE LAW.** This Agreement will be governed by and construed under the laws of the State of New York. If any case or controversy arises under this Agreement, any action will be brought in and adjudicated by the United States District Court, Southern District of New York, or if there is no federal jurisdiction, in the State of New York Supreme Court, County of New York.

11. **NO WAIVER.** No delay or omission by Fairfield or Mr. Mock in exercising any right under this Agreement or its attachments shall operate as a waiver of that or any other right. A waiver or consent given by Fairfield or Mr. Mock on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

12. **ENTIRE AGREEMENT.** More than one copy of this Agreement may be signed, each of which when signed will be deemed an original. This Agreement constitutes the complete understanding and agreement between the Parties to this Agreement with respect to the subject matter hereof, and supersedes and cancels all previous oral and written negotiations, agreements, and representations regarding such matters. No modification, amendment or supplementation of this Agreement may be made except in a writing signed by both Mr. Mock and Fairfield.

13. **NO RE-EMPLOYMENT.** Mr. Mock recognizes and agrees that his employment/work relationship with Fairfield and any corporate Releasees is permanently and irrevocably severed and he agrees not to apply for, solicit, seek or otherwise attempt to obtain employment, placement or assignment as a regular employee or contract worker with Fairfield or any of its affiliates, subsidiaries, or successors and this Agreement shall be a complete bar to any such application, employment, or assignment. Mr. Mock further understands that Fairfield and its affiliates, subsidiaries, and successors shall have no obligation to hire, employ or engage the services of Mr. Mock as a contract worker or process any such application submitted by him. The Parties agree that any such failure to

hire or process Mr. Mock's application shall not constitute a basis for any violation of federal, state, or local law or regulation or personal right

14. **NO FUTURE LAWSUITS**: Mr. Mock agrees and covenants not to file any suit against Fairfield (or any other Releasee pursuant to Paragraph 5 of this Agreement) in any court with regard to any of the claims released in Paragraph 5 of this Agreement. Mr. Mock further represents that no claims, complaints, charges, or other proceedings are pending in any court, administrative agency, commission or other forum relating directly or indirectly to his employment by or contractual relationship with Fairfield.

15. **RETURN OF FAIRFIELD INFORMATION/PROPERTY**. Mr. Mock agrees to retrieve and return to Fairfield, along with the executed Agreement, all information and property belonging to Fairfield including, but not limited to, any proprietary or confidential information of Fairfield in his possession, custody or control or that he provided to his present or former counsel or representatives, all documents or data produced by Fairfield in the course of discovery in this matter and answers to information requests. By signing this Agreement, Mr. Mock warrants that he has retrieved and returned all such property and information.

16. **ATTORNEYS' FEES**. It is agreed that each Party will bear its own costs, expenses and attorneys' fees. Mr. Mock further agrees and warrants that any attorneys' fees, costs or disbursements due or owing from him to his attorneys, experts, court reporters or any other person or entity arising from Mr. Mock's allegations or claims against Fairfield ("Fees") will be paid by Mr. Mock to the extent not satisfied by this Agreement, and that he shall defend, indemnify and hold Fairfield harmless from any and all claims for Fees.

17. **NON-ASSIGNMENT OF CLAIMS**. Each Party represents and warrants that it is the sole and lawful owner of all right, title and interest in and to every claim and other matter which it purports to release herein, and that it has not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claims or other matters herein released. If any Party is called upon to defend any claim based upon or arising in connection with any such prior assignment or transfer of any claims or other matters released herein, the Party who made such assignment will defend and hold harmless the other Party.

18. **NO IMPACT ON BENEFITS**. Payments made under this Agreement are not intended to: (a) form the basis for additional contributions to, benefits under, or any other monetary entitlement under; (b) count as earning or compensation with respect to; or (c) be considered to apply to, or be applied for purposes of, any of the Releasees' bonus, pension, and retirement programs, 401(k) plans, or any other benefit plan. The amounts paid pursuant to this Agreement are not compensation or wages for hours worked, hours paid, or any similar measuring term as defined by any plans and programs for purposes of eligibility, vesting, benefit accrual, or any other purpose.

19. **INTERPRETATION**. This Agreement is the product of negotiation among the Parties hereto and represents the jointly conceived, bargained for and agreed upon language mutually determined by the Parties to express their intentions in entering into the Agreement. Any ambiguity or uncertainty in this Agreement shall be deemed to be

caused by, or attributable to, all Parties hereto collectively. In any action to enforce or interpret this Agreement, the Agreement shall be construed in a neutral manner in accordance with its fair meaning, and no term or provision of this Agreement or the Agreement as a whole, shall be construed more or less favorable to any one Party, or a group of Parties, to this Agreement.

20. **MATERIALITY OF TERMS**. Each of the Parties hereby expressly acknowledges and agrees that each and every term and condition of this Agreement is a material part of the Agreement, and constitutes a material part of the bargained-for consideration which has induced the Parties to enter into this Agreement.

21. **HANDLING OF AGREEMENT IN ENFORCEMENT PROCEEDINGS**. This Agreement shall not be filed with any court or agency, unless necessary to enforce its terms, and shall remain forever confidential as described in Paragraph 3 of this Agreement. The Parties agree that this Agreement may be used only as evidence in a subsequent proceeding in which either party alleges a breach of this Agreement. Should either party file an action to enforce the terms of this Agreement, such party shall seek the full protection of the applicable court or other forum to provide for and protect the confidentiality of this Agreement.

22. **SEVERABILITY**. This Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement is held, determined or adjudicated to be invalid, unenforceable or void for any reason, each such provision shall be modified, if possible, in order to achieve the intentions of the Parties, to the extent possible, and, if necessary, each such provision shall be deemed severable from the remaining provisions of the Agreement and shall not affect the validity and enforceability of such remaining provisions; provided, however, that notwithstanding any other provision of this Agreement, if any portion of the waiver or release contained in Paragraph 5, or the confidentiality provision contained in Paragraph 3 is held to be unenforceable, the Releasees, at their option, may seeks modification or severance of such portion or terminate the Agreement and or consider the Agreement null and void.

23. **PERIOD FOR ACCEPTANCE**. Mr. Mock acknowledges that he has been given a full and fair opportunity (at least twenty-one (21) days) within which to review, consider and negotiate the terms and conditions this Agreement and decide whether or not to execute this Agreement and that he has been advised to seek the advice of an attorney in connection with his decision whether to accept the terms, conditions and benefits set forth in this Agreement. If Mr. Mock executes this Agreement at any time prior to the end of the 21-day period for consideration, such early execution was a knowing and voluntary waiver of Mr. Mock's right to consider this Agreement for at least 21 days, and was due to his belief that he had ample time in which to consider this Agreement.

24. **PERIOD FOR REVOCATION**. Mr. Mock and Fairfield agree that Mr. Mock may, within seven (7) days of his execution of this Agreement, revoke this Agreement. Revocation shall be made by delivering a written notice of revocation to Fairfield's counsel, Todd R. Shinaman, Esq., Nixon Peabody LLP, 1300 Clinton Square, Rochester, New York, 14604. The Parties agree that this Agreement shall not become effective or enforceable until after this seven-day period has expired. No action will be taken by

Fairfield pursuant to this Agreement if Mr. Mock revokes this Agreement.

25. **CONSIDERATION**. Mr. Mock understands and acknowledges that he would not be entitled to the consideration provided for in this Agreement under any of Fairfield's or its parent's or affiliates' policies, procedures or practices, that the payment and other benefits set forth in this Agreement constitute considerations and are accorded in exchange for his agreement to the terms hereof and are in full and final settlement of any and all claims that Mr. Mock has, had, may have or may have had against any Releasee as of the date hereof and that Fairfield's obligations under this Agreement are in lieu of any and all other amounts or benefits to which Mr. Mock might be, might have been or is now entitled to receive from Fairfield for any claim whatsoever including any claim for severance.

PLEASE READ CAREFULLY. THIS AGREEMENT CONTAINS A GENERAL RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

I, ELMER MOCK, ACKNOWLEDGE THAT I HAVE BEEN GIVEN A REASONABLE PERIOD OF TIME IN WHICH TO CONSIDER SIGNING THIS AGREEMENT AND GENERAL RELEASE. I ACKNOWLEDGE THAT I HAVE BEEN ADVISED TO CONSULT WITH AN ATTORNEY CONCERNING THIS AGREEMENT AND GENERAL RELEASE. I HAVE CAREFULLY READ AND FULLY UNDERSTAND ALL THE PROVISIONS OF THIS AGREEMENT AND GENERAL RELEASE, AND I AM ENTERING INTO THIS AGREEMENT AND GENERAL RELEASE VOLUNTARILY. I ACKNOWLEDGE THAT THE CONSIDERATION I AM RECEIVING IN EXCHANGE FOR EXECUTING THIS AGREEMENT AND GENERAL RELEASE IS IN LIEU OF ANY AMOUNTS TO WHICH I WOULD BE ENTITLED IN THE ABSENCE OF THIS AGREEMENT AND GENERAL RELEASE. I HAVE NOT RELIED UPON ANY REPRESENTATION OR STATEMENT, WRITTEN OR ORAL, NOT SET FORTH IN THIS AGREEMENT AND GENERAL RELEASE. I ACKNOWLEDGE THAT THIS AGREEMENT AND GENERAL RELEASE SETS FORTH THE ENTIRE AGREEMENT BETWEEN FAIRFIELD AND ME.

IN WITNESS WHEREOF, the Parties have hereunto set their hands and seals as of the dates appearing below each party's signature.

**ELMER MOCK**                    **FAIRFIELD RESIDENTIAL COMPANY LLC**

*Elmer Mock* (signature)          By: _____ (signature)

**Elmer Mock**

Date: 7/14/15                     Date: 7/21/15

State of TEXAS County of Travis

Subscribed and sworn before me on July 14, 2015 (Date)

_____ (Notary Signature)

4822-7278-0839.1

[Notary Seal: JOANNA HAYES, NOTARY PUBLIC, STATE OF TEXAS, MY COMMISSION EXPIRES MARCH 31, 2018]

JOAQUIN ARREOLA
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. MARCH 31 2013

## EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELMER MOCK,
Plaintiff,

- vs -

FAIRFIELD RESIDENTIAL COMPANY LLC,
Defendant.

14-cv-09048(AT)

## STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), the parties hereby stipulate to the dismissal of

all claims asserted in the above-captioned matter with prejudice and without costs or attorney's

fees to any party.

Respectfully submitted,

**ELMER MOCK**

By his attorneys,

**FAIRFIELD RESIDENTIAL COMPANY
LLC**

By their attorneys,

Shelly A. Leonard
Steven B. Blau
BLAU LEONARD LAW GROUP LLC
23 Green Street, Suite 303
Huntington, New York 11743
(631)458-1010

Todd R. Shinaman
Kimberly K. Harding
NIXON PEABODY LLP
1300 Clinton Square
Rochester, NY 14604
(585)263-1000

4822-7278-0837.2